UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

Case No. 25-1831

TOMMY GIGUERE,
    PETITIONER-APPELLEE

v.

STACY TARDIF,
    RESPONDENT-APPELLANT

**<u>PETITIONER-APPELLEE'S OPPOSITION TO RESPONDENT-APPELANT'S "MOTION TO STAY THE LOWER COURT JUDGMENT DATED AUGUST 26, 2025 (TALWANI, J.) REQUIRING THE RETURN OF THE MINOR CHILDREN TO CANADA AND SUPPORTING MEMORANDUM OF LAW"</u>**

NOW COMES Tommy Giguére, Petitioner-Appellee (hereinafter "Father") in the above captioned matter, and respectfully requests, that this Honorable Court **deny** the Respondent-Appellant's, Stacey Tardif, (hereinafter "Mother's") Motion to Stay the Lower Court's August 26, 2025 Judgment pending her appeal.

As was the case with the Mother's Motion to Stay filed on September 5, 2025, it is worth noting the facts have shifted between the time her Motion was filed and today. On S"eptember 5, 2025, Mother filed her "Application for Child Custody and Safeguard in the Quebec Superior Court (Family Division) and

caused Father to be served with the same[1]. Then, on Sunday, September 7, 2025, Mother brought the Children to Father in Quebec and agreed that Father keep them for the week as Mother was planning to be on "vacation" in Canada for the week. Upon information and belief, Father thinks Mother was in the process of renting a home in Quebec and moving herself and the Children into a rental while the Children are with Father for the week. Meanwhile, MG1 was going to start Kindergarten on Monday, September 8, 2025, in Quebec and the parties were planning to go to the drop off together.

However, upon receipt of the 4:00 AM temporary stay, Mother has now seemingly retracted on her verbal agreement with Father, objected to MG1 starting kindergarten, demanded the Children back and stated her intention to return the Children to Massachusetts for the week, threatening to file a contempt action if he does not turn over the Children by noon today. There is a hearing scheduled on Mother's Quebec custody action scheduled for Monday, September 15, 2025, so even if she were to take the Children back for a couple of days, they will be back in Quebec next weekend in preparation for Mother's court hearing on Monday morning.

---

[1] Father had previously filed his own action in Quebec, but Mother was in Massachusetts and Father had not yet been able to accomplish service.

In her further quest for a Stay, Mother's current motion attempts, unsuccessfully, to rectify some of the problems in her first Motion to stay but still fails to meet the requisite legal standard for such a successful motion to stay. The four-part test for a motion for stay is as follows: "(1) whether the stay applicant has made a strong showing that [she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." Chafin v. Chafin, 568 US 165, 133 S.Ct.1017, 1027 (2013), citing Hilton v. Braunskill, 481 U.S. 770, 776-77, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

## I. Whether the stay applicant has made a strong showing of likelihood of success on appeal.

### A. General Response to Mother's New Claims

Mother has again failed to establish a strong showing of likelihood of success on the merits of her appeal. Mother's burden is high because the standard of review on appeal is one of clear-error, see Monasky v. Taglieri, 140 S. Ct. 719, 730, 589 U.S. 68, 84 (2020). Mother's further motion to stay also selectively presented only the facts she believed supported her position, while disregarding the majority of the trial judge's findings, which were based on Father's evidence. Likewise, she conveniently continues to ignore all of the findings where her

evidence was found to be lacking in credibility and instead reiterates her evidence almost as if the trial never happened and the judge had made no findings.[2]

Further, in this second attempt at a stay, Mother mischaracterizes the Judgment, suggesting that the trial judge issued an actual custody order contrary to the provisions of the Hague Convention. In reality, the Judgment requires the <u>Mother</u> to return to the Children to Quebec by September 2, 2025. It was only if she failed to do so would the alternative "Or" provision apply - <u>or</u> to provide Father with the Children's passports and allow him to take temporary custody of the Children for purpose of returning them to their habitual residence of Quebec.[3] The Court's order merely directs that the Children be returned to Quebec, where Father has already filed an action regarding their custody. It does not, as the Petitioner suggests, determine or delegate custody decision-making over the Children.

When a return order is made following a Hague Convention case, Article 19

---

[2] In the District Court's Order Denying Mother's Motion to Stay dated September 1, 2025, the Court noted that "Respondent's motion ignores those findings, and instead recites her version of events, even where the court resolved those facts against her." Pg. 3

[3] The Court's Order states, "To ensure no further disruption of MG1's entry to Kindergarten in Quebec, Canada, at the earliest time that the parties can make appropriate arrangements, and in all events no later than September 9, 202, as previously permitted by the court… Respondent shall return the Children to Quebec Canada, **or** shall provide Petitioner with the Children's passports and allow Petitioner to take temporary custody of the Children so that he may return the Children to Quebec, Canada, where Petitioner has filed an action to address custody of the Children"

of the Convention specifically states, "A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue." The judgment does not grant Father or Mother custody it merely requires the return of the Children to their habitual residence as found by the court following a three-day trial.

Mother claims that the sentence confirming the rights of both parties to file an action in Canada is somehow a violation of the Hague Convention on the theory that the court has no power to decide who is entitled to seek custody. Neither party is suggesting that someone other than the Mother and Father are entitled to seek a custody determination for these Children but, if that were the case, the order does not specifically preclude anyone else from making such a claim once the Children are back in their habitual residence.

Mother also incorrectly claims that the Judgment exceeds the scope of the Hague Convention by empowering the Court in Quebec to make determinations regarding custody. Mother's claim goes well beyond what can be reasonably inferred from the straight-forward language of the Judgment. Nowhere in the Judgment did the District Court instruct a court in Quebec to do anything. If a court in Quebec believes it does not have jurisdiction to make orders, one can only conclude such court will make that determination when a case comes on for

hearing. The only thing the Judgment did was to continue to stay the custody portion of Mother's Massachusetts divorce action and prohibit Mother from filing any other Massachusetts litigation at this time (other than the pending appeal).

Mother's new theory that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is the better mechanism to resolve jurisdiction disputes, while interesting, is not applicable here. Massachusetts remains the one state in the country which has not adopted the UCCJEA and therefore it's terms cannot be applied by the Massachusetts Courts. Furthermore, Father cited to the Quebec Civil Code in his Hague Application and at no time did Mother provide any evidence to contradict Father's statement of the law of Quebec.

### B. *Habitual Residence Finding.*

Despite Mother's assertion in her motion to stay, the court **did** in fact find[4] the Children's habitual residence to be Canada at the time of their wrongful retention in the US. In support of this conclusion, the Court found the following facts, among others:

(a) The Parties and Children were all born in and continue to be citizens of Canada and were/are only in the US on temporary non-immigrant visas

---

[4] It is worth noting Mother did not include one citation to the Court's Findings of Fact in either of her Motions to Stay, instead choosing to continue to assert the facts she wanted the court to find while ignoring the actual findings.

(FF[5], pp. 2, 5).

(b) All of the Parties extended families and thus the Children's extended families live in Quebec[6] (FF, p. 2).

(c) The Parties agreed to move to the US on a temporary basis to assist with Mother's parents' company and determine if they liked living here and if not they would go back (FF, p. 5).

(d) The Family returned to Quebec for every major holiday and approximately every three weeks while living here. When they were not in Canada, they were often hosting family and friends from Canada. Neither Father nor the Children made friends in the US up until the time of their wrongful retention in August, 2024. (FF, p. 14).

(e) The Parties continued to have bank accounts in Canada and Mother opened an account for them in Massachusetts to which she added Father's name (FF, p. 7).

(f) The Children did not make friends when living in Haverhill (FF, p. 8). There are no Children in Salisbury in their neighborhood (FF, p. 14).

---

[5] The Court's August 26, 2025 Findings of Fact and Conclusions of Law are abbreviated as FF followed by the page on which the finding was made.

[6] Mother's parents live in Florida 6 months of the year with the other 6 months mostly in Quebec but also in MA as needed.

(g) The Children attended a very small in-home daycare with only four other children (FF, p. 14).

(h) The Children attended a few birthday parties (somewhere between 1-2 or 4-5) during their time here (FF, p. 14).

(i) In March, 2024, Father expressed his unhappiness and desire for the family to return to Canada when their i94 numbers expired in November 2024 (FF, p. 9). Mother acknowledged it was possible to return to Canada but didn't want to leave unless she was certain that is what he really wanted (FF, p. 9).

(j) Over the next few months Mother regularly raised the topic of staying in Massachusetts longer than November and Father reiterated each time that he wanted the family to return to Canada when their i94 numbers expired in November (FF, p. 10).

(k) The Parties did not import their car to the US until April, 2024 when they learned it was mandatory to do so (FF, p. 12).

(l) Father never imported his motorcycle (FF, p. 2).

(m) Both parties maintained Canadian driver's licenses during the relevant period of time (FF, p. 2).

(n) The Children maintained health insurance in Canada and got health

insurance in the US because it was required for daycare. They had a pediatrician in the US and in Canada. (FF, p. 14-15)

(o) Meanwhile, the court also found during the time Mother was leading Father to believe they would all return if he continued to be unhappy, she was taking steps to give up the family's Canadian residence. Specifically, Mother and/or her accountant typed up the NR73 tax form and Mother presented it to Father for his signature. He did not sign because he did not agree with the typed responses and the parties sat together and made hand changes at which point the Father signed the document with the handwritten changes. Thereafter Mother or her accountant submitted the typed version to the tax authorities in Canada which contained the same statements Father had refused to sign and omitted other checked boxes Father had checked, the details of which are laid out in the Findings of Fact (FF, pp. 10-12).

(p) Father agreed to enroll MG1 in Preschool in August 2024 until returning to Canada in November because Mother told him the daycare did not have room for her to stay there (FF, p. 15).

(q) Father stipulated to temporary parenting plans in connection with the Mother's divorce action because Mother would not let Father see the

Children without written stipulations at a time when she had unilaterally changed the locks on their Townhouse and had possession of the Children's passports (FF, pp. 19-20).

The Court's findings make it abundantly clear that portions of Mother's evidence was either not credible, lacked candor, was less credible than Father's evidence, or contradictory to the stipulated facts (See, FF pp. 3, 9, 10-12, 13). Findings of credibility, or lack thereof, are determinations left to the discretion of the trial judge and will not be disturbed on appeal unless clearly erroneous. "In actions that are tried to the court, the judge's findings of fact are to be honored unless clearly erroneous, paying due respect to the judge's right to draw reasonable inferences and to gauge the credibility of witnesses. A corollary of this proposition is that, when there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. . . . [W]hen a case has been decided on the facts by a judge . . . an appellate court must refrain from any temptation to retry the factual issues anew." Johnson v. Watts Regulator Co., 63 F.3d 1129, 1138 (1st Cir. 1995) citing Adelson v. Hananel, 652 F.3d 75, 86 (1st Cir. 2011).

Based on the evidence before the Court, the finding that **Canada was the Children's habitual residence** at the time of the wrongful retention is appropriate.

"Because locating a child's home is a fact-driven inquiry, courts must be "sensitive to the unique circumstances of the case and informed by common sense." Monasky v. Taglieri, at 727 citing Redmond v. Redmond, 724 F. 3d 729, 744 (7th Cir. 2013). "For older children capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant." Id. For younger children, such as MG1 and MG2, acclimatization "depends on their parents as caregivers, making the intentions and circumstances of caregiving parents … relevant considerations." Monasky v. Taglieri, at 727. In this instance, the trial Judge heard the evidence, weighed credibility of that evidence, reviewed the totality of the circumstances as Monasky instructed. The Judge found that these young children, whose entire extended family live in Quebec, who regularly travel back and forth to Quebec, and whose parents came here on a temporary basis had not abandoned their habitual residence of Quebec as of August, 2024.

### c. *Mother's Defenses of Consent and Acquiescence.*

Mother's new Motion to Stay spends significant time on the issue of consent. In doing so, she turned all of her affirmative actions into actions of the Father. Mother now claims that Father actively facilitated the temporary move when the court found Father's English was limited to basic conversations or ordering in restaurants but Mother handled official communications for the family

(FF, p. 7). Further, the facts Mother now seeks to attribute to the Father were actions she took or encouraged to which he went along. (FF, p. 7, 10-12, 14). Nevertheless, there is no question that Father consented to the Children remaining in Massachusetts until August, 2024, but withdrew his consent in August, 2024.

Father's actions after August, 2024, speak to whether or not he acquiesced to their remaining here. After learning of Mother's divorce, Father immediately took all of the steps he knew to be available to him to secure the Children's return to Quebec. Along the way, when faced with either spending no time with the Children or conceding to temporary parenting plans, he consented to temporary measures in order to avoid losing touch with his young Children completely. Despite Mother's claims to the contrary, Father did file a verified motion seeking time with the Children and a motion for speedy hearing and short order of notice to get in front of a judge more quickly – his motions were denied (FF, p. 20). Faced with limited options, Father consented to temporary orders, but at no point did he relent on his claim that the Children should return to Quebec. Mother is trying to conflate Father's limited cooperation with acquiescence, when in reality his position has always been that Massachusetts is not the Children's habitual residence but rather Quebec is. To hold otherwise, would penalize Father for attempting to maintain a relationship with his Children under extremely restrictive

Page 12

circumstances, while simultaneously undermining the purpose of the Hague Convention's protections against wrongful retention.

Mother's claim that Father has, by his own admission, acknowledged that Massachusetts is the Children's habitual residence based on statements in his Verified Motion for Temporary Orders is a blatant mischaracterization. In context, Father meant that because Mother had refused to allow the Children to return to Quebec until Temporary Orders were in place, it was in the Children's best interests, under a Massachusetts parenting schedule, for them to remain in their Massachusetts home with Father during his parenting time in Massachusetts rather than stay in a hotel with Father during his parenting time, as Mother was then demanding. This statement is now being unfairly misconstrued as an acknowledgment that Quebec is not the Children's habitual residence or that Father acquiesced to their remaining in Massachusetts.

Mother's defense is that Father waived his right to seek relief under the Hague Convention when he participated in her divorce action and filed a counterclaim to remove the Children back to Quebec rather than moving to dismiss that case for lack of subject matter jurisdiction. However, the divorce case remains open and in the discovery phase and the custody components have been stayed pending the outcome of this case. Father was under no obligation to pursue a

course of action preferred by Mother and is fully entitled to seek relief under the Hague Convention in this Court prior to any final custody determination by the family court.

Father did not give up his pursuit for a path for the Children's return to Quebec and actively pursued alternative avenues even after executing the stipulation for temporary orders. His efforts eventually lead to his discovery of the Hague Convention on Civil Aspects of International Child Abduction and to counsel versed in this process.

"[T]he defense of acquiescence pertains only to what happens post-retention." Darin v. Olivero-Huffman, 746 F.3d 1,16 (2014). "The exceptions are 'narrow' and must be narrowly construed." 42 U.S.C. § 11601(a)(4). In this case, Father expressed his objection to the Children remaining in Massachusetts in his answer and counterclaim wherein he sought permanent removal of the Children back to Quebec. And, once his Petition in this Court was filed, he sought a stay of the custody component of the Divorce action in the Probate and Family Court which has been stayed pending the outcome of this matter. Father's signing of the stipulation for temporary orders provided only for temporary custody and ought not to be read as if it was a permanent acquiescence to the Children remaining in Massachusetts or a waiver of Hague Convention rights. Nicholson v. Pappalardo,

605 F.3d 100, 106-107 (2010). Much like Nicholson, this is a case of temporary custody. "Permanent custody is a different almost certainly of greater importance to the parents and not one that would necessarily be addressed in any way in a consent order providing for temporary protection and custody." Id at 108.

Mother's heavily reliance on Larbie is misplaced. In that case, the Mother did not file a Hague Convention case until a final judgment had entered in the Texas case. Moreover, that was a Fifth Circuit case not a First Circuit case so while potentially persuasive, it is not precedent which must be followed in lock step. The better comparison for the instant case is Nicholson.

Accordingly, like in Nicholson, "we do not have a 'clear and unequivocal' expression of an agreement by [Father] to have final custody determined in a Massachusetts court, nor a 'convincing written renunciation of rights' to this effect." Id. at 108-109.

## II. Whether the Applicant Will Be Irreparably Injured Absent A Stay.

Mother will not be irreparably harmed absent a stay of the Judgment because even if the Children are returned to Canada during the pendency of the appeal, the appeal itself is not moot and a re-return order can be entered. See, Chafin v. Chafin, 133 S.Ct. 1017, 568 U.S. 165 (2013). "Even if [Canada] were to ignore a re-return order, this case would not be moot. The US courts continue to have

personal jurisdiction over [Father] and may continue to command [he] take action under threat of sanctions." Chafin at 1020 citing Nken v. Holder, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009). This is even more true in the instant matter because there is still an open divorce case pending in the Essex Probate and Family Court in which Father is required to participate. In the event of a re-return order, Father would have no choice but to comply or risk facing negative consequences in the divorce action.

Mother cannot claim irreparable harm to herself, as she is literally the only family member on either side of this extended family living in Massachusetts and certainly the only one asserting the need or desire to remain here. The Court found Mother has the ability to work remotely in her current role from Quebec so she could easily return home with the Children even on a temporary basis pending the final outcome of her appeal and continue her same job. Mother's entire extended family reside in Quebec (aside from her parents who reside in Florida in the winter) and her parents' Quebec home is only occupied by her parents when they are in Quebec. Mother had no issue living with her parents in Haverhill so there should be no issue living with them, even if temporarily in Quebec during the pendency of her appeal.

Finally, it should not be overlooked that Mother's presence in Massachusetts

continues to be on a non-immigrant E-2 visa which is nearly three years into the five year term of validity at this point.

### III. Whether Issuance of the Stay Will Substantially Injure Other Parties Interested in the Proceeding

The record is clear that essentially all of the Children's family ties, on both Petitioner and Respondent's side of the family including grandparents, brothers, sisters, aunts, uncles, cousins, and lifelong friends live in Quebec. The Parties and Children did not form meaningful friendships in the US during the relevant period and there are no other children in the neighborhood. During the relevant timeframe, their social life consisted of spending weekends with their parents, hosting family and friends from Quebec, or visiting family or friends in Quebec. There are childcare / school options for both Children in Quebec which they could seamlessly slide into. Despite Mother's ongoing claims that the Children speak better English than French, such a finding was not part of the trial record. And the fact remains, the Children are fluent in French, the language which they speak with their extended family. The natural objects of the Children's affections are in Quebec. There is no injury to the Children if the motion to stay is denied.

MG1 has not yet started elementary school. Even after this week, MG2 remains too young for elementary school and continues in a daycare in Massachusetts which at capacity can accommodate 6 children. MG1 was enrolled

to start kindergarten on September 2nd and, upon information and belief, is registered in both Quebec and Salisbury MA. When the initial temporary stay was granted by the District Court, MG1 did not go to school. She was again scheduled to begin kindergarten in Quebec on September 8, 2025. Mother delivered the Children to Father on September 7th at 4:00 PM and agreed they could stay with him for the week. They were going to both bring MG1 to her first day of kindergarten in Quebec this morning. However, with the temporary stay being again granted at 4 AM, Mother objected to the first day of school plan and is now demanding return of the Children.

We have reached a critical point where MG1 has been harmed by temporary stays given her peers all started kindergarten over a week ago without her. She will continue to be harmed for each day that she is prevented from starting school by temporary stay orders given the fact that Mother has not made a strong showing of a high likelihood of success on the merits of her appeal. In other words, it is more harmful to MG1 to grant the stay.

### IV. Where the Public Interest Lies.

The public interest would not be served by issuing a stay which would essentially condone Mother's wrongful retention of the Minor Children, and would

also be violative of the Convention, the terms of which call for the Minor Children to be returned to Canada. Indeed, stays conflict with the Convention's mandate of prompt return to a child's country of habitual residence and allowing routine stays for a losing parent will only serve to encourage more appeals thus undermining the goals of the Convention. <u>Chafin</u> at 1027. Granting a stay in this case would not only delay justice for these Children but would also signal to other litigants that delay tactics can effectively undermine the Convention's purpose. The assertion by Mother that Father engaged in impermissible forum shopping contrary to the principles of the Hague Convention is, quite frankly, laughable. Mother herself is engaging in forum shopping by filing numerous motions to stay in District Court and the Appeals Court until she obtains a favorable outcome all the while she has also initiated litigation over custody in Quebec. This Court ought not to accept Mother's invitation to issue a routine stay just because she wants to continue to delay the inevitable.

    WHEREFORE, the Father requests that this Honorable Court **deny** the Mother's Motion to Stay and order Mother to pay his reasonable legal fees and costs associated this response to her second emergency motion to stay.

Date: September 8, 2025

Respectfully submitted,
**Tommy Giguére,**
By his attorneys,

/s/ *Wendy O. Hickey*
Wendy O. Hickey, #118610
Brick, Jones, McBrien & Hickey, LLP
250 First Avenue, Suite 201
Needham, MA 02494
(617) 494-1227
whickey@brickjones.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within Opposition to Motion for Stay was this day served upon Respondent's counsel, Matthew Barach, via the Court's CM/ECF system and email to mbarach@barachfamilylaw.com this 8th day of September, 2025.

/s/ *Wendy O. Hickey*
Wendy O. Hickey, #118610
Brick, Jones, McBrien & Hickey, LLP
250 First Avenue, Suite 201
Needham, MA 02494
(617) 494-1227
whickey@brickjones.com